## In re BUTTERWICK.

(District Court, M. D. Pennsylvania. June 29, 1904.)

### No. 410.

1. BANKRUPTCY ACT—PROPERTY PASSING TO TRUSTEE—RIGHTS OF EXECUTION CREDITORS—LOCAL LAW.

By Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], the trustee is vested by operation of law with the title of the bankrupt, as of the date when he was adjudged a bankrupt, to, inter alia, all property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him. The trustee, by this, does not simply

stand in the shoes of the bankrupt, but is invested with the rights of his execution creditors as well; and this is to be determined by the local law.

2. SAME—CONDITIONAL SALES—RECLAMATION OF GOODS FOR NONPAYMENT OF PRICE.

Where, therefore, in a case arising in Pennsylvania, goods are sold and delivered to a bankrupt at a specified price and on definite terms. a superadded agreement that the title shall remain in the seller until the price is paid is without avail as against creditors, and the goods cannot be reclaimed by the seller; the title to them vesting in the trustee.

In Bankruptcy. On certificate from M. H. Taggart, referee.

Edward S. Gearhart, for Grand Rapids Show Case Co., claimants. Charles M. Clement, for trustee.

ARCHBALD, District Judge. In the possession of the bankrupt at the time of filing his petition were four show cases, now in the hands of the trustee, which were obtained from the Grand Rapids Show Case Company, and are claimed by them as their property. These goods were ordered by the bankrupt of that company October 9, 1903, after the usual business solicitation on their part, the price being fixed at $210. A few days later, and before the order was filled, the following agreement was executed by the bankrupt:

"As per our order of October 9 given the Grand Rapids Show Case Co. of Grand Rapids, Mich., for show cases I hereby agree that the title to the said furniture shall be theirs until the full amount of purchase price has been paid.
"Oct. 14, 1903.                                         N. H. Butterwick."

The goods were shipped November 28th upon the following invoice:

"Grand Rapids, Mich., 11/28/03.
"Grand Rapids Show Case Co.
                              "Sold to Mr. N. H. Butterwick, Danville, Pa.
"4–6 ft. 60 Display Cases 28¼" wide, 1 PC. Bevel Tops...............
"1 PC. Sheet Fronts, Mirror Doors, 4 Electric Reflectors.............. $210 00
      "Terms: ½ Jan. 1 ¼ Jan. 20 ¼ Feb. 10."

The terms given in the invoice were so fixed as to enable the bankrupt to pay out of the holiday trade; but before a single remittance had been made, on January 2, 1904, he went into voluntary bankruptcy, leaving the Show Case Company in the lurch. The question is whether they or the trustee is entitled to the goods.

By section 70 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565, 566 [U. S. Comp. St. 1901, p. 3451]) the trustee is vested by operation of law with the title of the bankrupt as of the date when he was adjudged a bankrupt to all "(5) property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him." That is to say, the trustee does not stand simply in the shoes of the bankrupt, but is invested with the rights of his execution creditors; and the question in the present instance therefore is whether the show cases which are sought to be reclaimed could have been successfully subjected, while in the hands of the bankrupt, to levy and sale upon execution against him. This is to be determined by the local law (Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986), with regard to which, as applied to this case, there can be no doubt. The show cases

were furnished to the bankrupt at a specified price and on definite terms of payment, and the agreement, in the face of this, that title should not pass until they were paid for, was a clumsy attempt to retain a lien for the price notwithstanding the delivery, which, as to creditors, was fraudulent and void. The decisions in Pennsylvania upon this subject are numerous, an extended review of which may be found in Ott v. Sweatmann, 166 Pa. 217, 31 Atl. 102. The liability to creditors in any given case in this state turns on the question whether the transaction is a conditional sale or a bailment, with regard to which it is consistently held that, to constitute the latter, by which the goods are exempt, they must have been delivered for a definite term and purpose, with a provision, express or implied, for their return at its end. But where, on the other hand, the transaction between the parties is essentially a sale, the superadded agreement that the ownership shall remain in the seller, notwithstanding a delivery, until the price is paid, is without avail as against creditors, and the property may be seized and sold. Stadtfelt v. Huntsman, 92 Pa. 53, 37 Am. Rep. 661; Farquhar v. McAlevy, 142 Pa. 233, 21 Atl. 811, 24 Am. St. Rep. 497. The latter beyond question is the status here. That the transaction was understood to be a sale is unmistakably shown, not only by the original negotiations, but by the invoice, which assumes the form of a memorandum bill for the goods upon definite terms and prices. No doubt, as argued, the original intention could be modified while the contract was still in an executory stage (Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774); but it would have to be changed radically from what here appears to enable these parties to maintain their claim. They have nothing but the bare agreement that title should not pass until the show cases had been paid for—a condition which did not in any respect change the character of the transaction as a sale.

The case was properly disposed of by the referee, and his action is affirmed.