In re GEORGE O. HASSAM & SON.

FLINT WAGON WORKS v. BUTTLES.

(District Court, D. Vermont. May 27, 1907.)

BANKRUPTCY—CONDITIONAL SALES—VALIDITY.

Where conditions reserving title in the seller, printed on the back of contracts for the sale of wagons to a bankrupt, which the seller knew were to be resold in the course of the bankrupt's business, were not called to his attention at the time the contracts were made, and the bankrupt testified that he had no knowledge of such printed conditions until his attention was called thereto by his trustee in bankruptcy, the contracts never having been recorded, the title to the wagons passed to the trustee in bankruptcy as against the seller; such conditional provisions being fraudulent and invalid as against the bankrupt's creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 199.]

C. G. Austin & Sons, for petitioner.

Charles L. Howe, for petitionee.

MARTIN, District Judge. This case came on for hearing before me at Rutland, May 6th. I find that on September 27, 1905, the petitioner sold the bankrupts several wagons. This sale was by written contract upon the face of which was printed, in plain but small type, these words: "Read this order carefully before signing and see that it corresponds with the duplicate copy." And in another place, in like plain but small type, these words: "Subject to conditions printed on the other side of this order which are hereby agreed to"—being a printed blank contract, the place of sale, date, name of parties, and articles sold being written in, and signed George O. Hassam & Son, in the handwriting of George O. Hassam, Upon the back thereof is printed in fine, but plain, type, the following:

"The title to the goods shipped on this order, or any subsequent orders, is to remain in your name until paid for in cash, and should we through any cause suspend doing business, or become, or apparently become, embarrassed financially, any account or note you have against us shal' become immediately due and payable, and we will deliver to whom you may direct, or place on cars if you so direct, any or all of your goods remaining on hand, free of charge of any kind.

"You agree to replace, free of charge, any axle, wheel or spring that may become unfit for use within one year from date of shipment, by reason of defective material or workmanship, and will repair or replace same upon return to you (by freight) and pay freight charges one way. We understand that you do not authorize any repairs to be made on your account, and will not recognize or pay such bills.

"We will look to the transportation company for any overcharge in freight or loss or damage to goods while in transit, and will not countermand this or future orders without your consent in writing.

"This and subsequent orders are subject to the approval of your office at Flint, Mich.

"Goods hereafter ordered will be on same terms unless others are agreed on in writing, but prices on future orders are subject to change without notice.

"Claims that goods are not in accordance with order will be made within five days after arrival of goods, or they will be considered waived.

"This contract embodies all agreements, conditions, stipulations and representations, and none other, be they verbal or otherwise, are to be recognized."

One wagon out of this sale, being No. 247, is now in the hands of said trustee. On the 19th of October of the same year, the petitioners made a like sale of sundry wagons to said bankrupts, using the same kind of a printed blank, with the same printing above quoted upon the face thereof, and the same conditions upon the back. Both of said contracts are referred to and made a part of these findings.

All the wagons embraced in the sale of October 19th are now in the hands of the petitionee except one No. 445 and one No. 421. For the wagons embraced in the order of September 27th, the bankrupts gave their promissory note, upon which payments were made, and of which there were two renewals. There is now due upon the last note given for said wagons $170 and some interest. The bankrupt, George O. Hassam, appeared and testified that his attention was not called to the fine printing on the back of either of said contracts; that the first knowledge he had was when his trustee in bankruptcy called his attention thereto; that the first time that he knew that the petitioner claimed these wagons was in March last, when Mr. Bedard, their sales agent, stated to him that they claimed the wagons by virtue of the printing upon the back of the contract. He further testified that the said Mr. Bedard, agent for the petitioner, made these contracts with him and left with him a carbon copy, and it was this carbon copy that the trustee was examining at the time he called his attention to the printing upon the back thereof. He further testified, under objection by the petitionee, that:

"Mr. Bedard, the selling agent of the company [meaning the petitioner], came to our place of business in Rutland and wanted to sell us wagons. We made several purchases of him and signed an order each time. Cannot state the number, but there were more than these two purchases. Presume the orders were all alike. I did the signing. Our attention was never called to the fine print on the back, and we never agreed to that, for it was never mentioned, and we never knew anything about it. We didn't know it was there. I looked over the writing to see that the right kind and the right number was inserted and the prices carried out as was agreed upon. I had a carbon copy. He read the different wagons and the prices, which I compared with my copy. The printing was not read."

On cross-examination the witness was inquired of as follows:

"Q. Didn't Mr. Bedard always deal with you honorably and uprightly? A. So far as I know, he did. Q. Do you claim that he deceived you? A. I don't say that. Q. Wasn't it your own fault that you didn't read the conditions on the back of the paper you signed? A. It may be, but I should think he ought to have called my attention to it."

Mr. Bedard was in court and heard this testimony, but did not take the stand as a witness. No claim was made that the facts stated by the witness Hassam were not true.

I find that the said Hassams' (the bankrupts') attention was not called to the conditions in fine print upon the back of the papers signed by them, that they knew nothing of it until their attention was called to it by the trustee, and that they did not assent or agree to the conditions stated thereon. These contracts were never lodged for record in the town clerk's office at Rutland, or elsewhere. At the time of the making of these contracts the bankrupts were dealers in

wagons, buying and selling. Sales were made to the public generally. Both parties understood that they were for sale by the said Hassams. All of the wagons embraced in the order of September 27th, except two, and one wagon embraced in the order of October 19th, as before stated, were sold by the said Hassams. This pretended lien was a secret one placed upon property intended for sale, and comes squarely under the decision of the Circuit Court of Appeals for this circuit in Re Garcewich, 115 Fed. 87, 53 C. C. A. 510.

The petitioner claims that the case of York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, is controlling of the case at bar. I do not concur in that view. That case arose on the statute of Ohio. The lien reserved was for machinery obtained by the Mt. Vernon Ice, Coal & Milling Company for the manufacture of ice, and designed for the use of, and not for sale by, said company. The opinion of the court was delivered by Justice Peckham. He therein states:

"The trustee, under such circumstances, stands simply in the shoes of the bankrupt and as between them he has no greater right than the bankrupt."

And he cites the case of Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, and Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and quotes from the latter case these words:

"Under the present bankrupt act, the trustee takes the property of the bankrupt in cases unaffected by fraud in the same plight and condition that the bankrupt himself held it and subject to all the equities impressed upon it in the hands of the bankrupt."

It will be observed that the court in its opinion guards it by the words "unaffected by fraud." The whole trend of authorities is that a lien or mortgage placed upon goods obtained for sale by the vendee, and unrecorded, is a secret arrangement, is in law a fraud upon creditors, and cannot be enforced against a trustee of such a vendee who subsequently becomes a bankrupt.

In the case of Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, relied upon by the petitioner, the mortgage was upon livery property, consisting of "horses, wagons, sleighs, vehicles, harnesses, robes, blankets," etc.; but it will be observed that the mortgage was duly recorded in the town clerk's office in St. Johnsbury, and the mortgagee took possession of the property before the mortgagor went into bankruptcy. While this mortgage was upon a shifting livery stock, it provided that it should rest upon after-acquired property in its stead. The record in the town clerk's office gave that notice. In the opinion of the court in that case, this language is used:

"There is no pretense of any actual fraud being committed or contemplated by either party to the mortgage. Instead of taking possession at the time of the execution of the mortgage, the defendant had it recorded in the proper clerk's office, and the record stood as notice to all the world of the existence of a lien as it stood when the mortgage was executed, and that the defendant would have the right to take possession of property subsequently acquired, as provided for in the mortgage. The bankrupt, therefore, was not holding himself out as unconditional owner of the property, and there was no

securing of credit by reason of his apparent unconditional ownership. The record gave notice that he was not such unconditional owner. There was no secret lien," etc.

In the case at bar there was an attempted lien, absolutely secret, not even made known to the vendee, and never intended to be brought to light unless the vendee should become insolvent. The vendee was put in possession of a large number of wagons, of which he was apparently the absolute owner. There was a secret attempt on the part of the vendor, should the vendee succeed in getting credit by having about him a large amount of unincumbered property, and should thereafter be unable to pay debts so incurred, to make time notes given for said property "immediately due and payable," and the vendee deliver to the vendor all goods remaining unsold, and all the while they should remain in the name of the vendor. I cannot conceive in what manner the vendor anticipated that the goods could remain in its name when possession was passed to the vendee, and no record made of the transaction. It has been repeatedly held that, when personal property is delivered to a vendee for sale, or to be dealt with in a way inconsistent with the ownership of the seller, or so as to destroy his lien or right of property, the transaction cannot be upheld as a conditional sale, and is fraud upon the creditors of the vendee. In re Garcewich, supra; In re Carpenter, 11 Am. Bankr. Rep. 147, 125 Fed. 831; In re Howland, 6 Am. Bankr. Rep. 495, 109 Fed. 869; In re Rodgers, 11 Am. Bankr. Rep. 93, 125 Fed. 169, 60 C. C. A. 567; In re Butterwick, 12 Am. Bankr. Rep. 536, 131 Fed. 371.

In no case decided by the Supreme Court, to which my attention has been called, has the court upheld secret liens or mortgages upon goods designed for sale or so tainted by fraud as to creditors as this case appears to be.

The petition is dismissed.