PRESCOTT v. GALLUCCIO et al.

(District Court, N. D. New York. October 19, 1908.)

1. BANKRUPTCY (§ 178*)—FRAUDULENT TRANSFER OF PROPERTY—RECOVERY BY TRUSTEE.

A bankrupt, some six months before his bankruptcy, executed to his wife without consideration a deed to real estate which had been paid for in part from the proceeds of a boarding house conducted by his wife, but not as a separate business, and in part with other money of his. Prior to such conveyance he had made statements for the purpose of obtaining credit in which he represented that he was the owner of the property. Shortly after such deed he sold the property, and he and his wife joined in making a deed thereto to the purchaser, who gave back a mortgage for a part of the purchase money to the wife. The deed to her, however, was not delivered until it was recorded by the bankrupt a few days prior to his bankruptcy, and when insolvent, and in the meantime he had largely increased his indebtedness, and both he and his wife stated to his

creditors that she had no property, but all the property was his. *Held*, under the evidence, that the deed to the wife was made with intent to defraud both present and subsequent creditors, and was void as to both classes; that it gave the wife no right to the mortgage taken in her name, which was the property of the bankrupt, and recoverable by the trustee, under Bankr. Act July 1, 1898, c. 541, § 70e, 30 Stat. 566 (U. S. Comp. St. 1901, p. 3452), the purchaser of the property having bought in good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 273, 274; Dec. Dig. § 178.*]

2. BANKRUPTCY (§ 302*)—SUIT BY TRUSTEE—PLEADING.

A bill by a trustee in bankruptcy to recover property fraudulently conveyed by the bankrupt, under Bankr. Act July 1, 1898, c. 541, § 70e, 30 Stat. 566 (U. S. Comp. St. 1901, p. 3452), should allege that the property of the bankrupt is insufficient to pay his debts in full; but where no objection is made on that ground, and the proof shows such fact, the omission may be supplied by amendment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 302.*]

In Equity. Suit by trustee to set aside certain deeds or transfers of real estate and recover same, or proceeds thereof, for benefit of estate.

G. L. Prescott, for plaintiff.
D. F. Searle, for defendants Galluccio.

RAY, District Judge. August 16, 1906, John Galluccio filed his petition and schedules in voluntary bankruptcy. August 17, 1906, he was adjudicated a bankrupt accordingly. August 31, 1906, the plaintiff was duly appointed trustee in bankruptcy, and September 4, 1906, he duly qualified as such. April 29, 1902, Minnie A. O'Neil, in consideration of the sum of $1,000, deeded to John Galluccio the lands and premises in question, situate in the city of Rome, Oneida County, N. Y., where Galluccio and Angelina Galluccio his wife then resided. This deed was duly recorded in Oneida county clerk's office May 6, 1902, in Liber 576 of Deeds, at page 68. The title stood in the name of said John Galluccio under this deed until December 20, 1905, some three years and eight months, when John Galluccio deeded same to Angelina Galluccio, his wife, for the recited consideration of $100. This deed was not recorded until the 10th day of August, 1906, when it was recorded in Oneida county clerk's office in Book 603 of Deeds, at page 247. March 12, 1906, said John Galluccio and Angelina Galluccio, his wife, executed a deed of the said premises to Raffaele Dolende and Stella Dolende, of Rome, N. Y., in consideration of $1,260; they giving back a mortgage to secure the payment of $1,060 of the purchase price. This deed was recorded March 16, 1906 in Book of Deeds 615, page 332, and the mortgage was recorded the same day in Liber 425 of Mortgages, page 498.

On and prior to August 15, 1906, John Galluccio owed the firm of Marone & Lofaro, of Utica, N. Y., about $700. The last of July, 1906, he owed the firm $400, and, having been asked for pay, he went to Mr. Marone, one of the firm, and gave him a check for something over $300 on account, and purchased more goods on credit. The

check was duly presented and not paid; Galluccio having no funds. It was never paid, nor was the new indebtedness. Early in August Marone went to Rome, and saw Galluccio and his wife, and asked for pay; asked for a note with the indorsement of the wife. The wife declined to sign a note, and stated as the reason she had nothing, no property, no personal property or real estate, no interest in any property; that everything was in the name of Mr. Galluccio. She stated the same to Mr. Grant, who was present. Mr. Marone then said he would rely on that and on Galluccio's promise. Soon after Galluccio went into bankruptcy, and the wife claims the mortgage as hers. In 1905, when Marone commenced extending this credit to Galluccio, Galluccio stated to him that he owned property, real and personal, and Marone relied on that statement in extending the credit; but he did not inquire as to the particulars, or what particular property he owned. Marone did not learn of the transfer of this property from Galluccio to his wife, and then to Dolende, until after the bankruptcy. Early in August, 1906, John H. Grant went with Mr. Marone to see Galluccio, and saw him and his wife at Galluccio's place of business. At that time and place both Galluccio and his wife stated to Grant and Marone that the wife had no property, and that everything belonged to Gálluccio. When John Galluccio and Angelina Galluccio deeded the property to the Dolendes, they paid down $200, paying $1,260 for the property. The $200 was paid by turning over bank books to John Galluccio, and he got the money. At the time of the trial there was unpaid of the principal on the mortgage $760.

In December, 1905, John Galluccio made application to Armour & Co., at Rome, N. Y., for credit; said application being made to Allen T. Humphrey, the agent of said company. Mr. Humphrey drew up an application for credit, and inquired of Galluccio what property he had, and Galluccio answered, and stated that he owned real property worth $1,200, and also property he had bought of one A. Frank, and stated it was free from incumbrance. Humphrey ascertained it was this property in question. The representations were reported to Armour & Co., and on the strength of such representations credit was given by that company to John Galluccio. He had not then deeded the property to his wife. Other credit was given on the strength of the same representations thereafter, and before the deed to Angelina Galluccio was recorded or the transfer to her became known. At the time the property was purchased and John Galluccio took the deed $500 was borrowed of one Ellis to pay a part of the purchase money, and a mortgage was given, executed by both John and his wife, necessarily and properly to cut off the dower interest of the wife. That was subsequently paid by John Galluccio, and, I find, with his money. Both John Galluccio and Angelina, his wife, deny the representations and statements alleged and above referred to; but I am fully satisfied they were made, and that credit was given on the strength of them and the apparent ownership of the property by John Galluccio. The wife now claims that she paid in most of the money for the place, that it should have been deeded to her, that when she discovered the deed was to her husband they quarreled over the matter, and that as a result he deeded it over to her, because it was hers in fact and was to

have been deeded to her. There is no evidence to sustain such a claim, except the testimony of John Galluccio and that of his wife. They claim they kept roomers and boarders, and in this way she earned the money; but her services belonged to the husband. It is said she paid for groceries at the store; but it also appears that the husband furnished her money for this purpose.

On a careful perusal of the evidence I am convinced that the representations and statements set forth were made by both husband and wife; that they were made for the purpose of obtaining credit and keeping off creditors, and acquiesced in by the wife; that she represented and admitted she had no property, but that everything belonged to her husband; that in fact the property was purchased by the husband, that his money paid for it, that he was the owner, and that the transfer was made to the wife when he was in debt and obtaining credit, and that the deed was purposely kept from the records; that he did obtain credit both before and after the deed to the wife on the strength of his statements and apparent ownership; and that the transfer was made to the wife and received by her for the purpose of cheating and defrauding his creditors. So far as Raffaele Dolende and Stella Dolende are concerned there was no fraud or bad faith. They purchased in good faith and for a valuable consideration, and gave the mortgage referred to to secure the payment of a part of the purchase price, most of it. That mortgage was given to the defendant Angelina Galluccio, and some $700 is unpaid thereon. She still has it. With it in her possession she denied that she had any property, and stated that everything belonged to her husband John Galluccio. The claims of these creditors against Galluccio have been proved and allowed. These claims existed in part when the illegal and fraudulent transfer was made by John Galluccio to his wife, Angelina Galluccio. Angelina Galluccio has no moral right to that mortgage, or the moneys due or unpaid thereon, as against the creditors of John Galluccio. There is no allegation or proof that John Galluccio was insolvent at the time the deed to his wife was executed. He was insolvent at the time it was recorded. The schedules of the bankrupt show that his estate was and is insufficient to pay his debts existing at the time of the filing of the petition in bankruptcy. This fact is not alleged in the bill of complaint; but no objection on that ground was raised during the trial or on motion to dismiss. No demurrer was interposed. There is no evidence that the deed from Galluccio to his wife was ever delivered to her, except from the fact that John Galluccio, at about the time it was recorded, sent it to the clerk's office for record. He says:

"Q. When did you find out that the deed ought to be recorded? A. The time when I failed, and I brought all my papers to Mr. Searle, and he looked over the papers, and he saw that deed over there, and he said, 'Why don't you send that deed to Utica?' and I told him I didn't know anything about it, and he sent it."

I do not think the evidence shows a delivery of the deed to Mrs. Galluccio until the date of record. There was no adequate consideration for the transfer from Galluccio to his wife. It seems to me that the money earned in keeping boarders belonged to the husband. The

services of the wife belonged to the husband. The premises where they lived and kept roomers and boarders did not belong to the wife. She was not running the business as her own independent business. There is no pretense the wife had property from any other source. If she paid some of the board and rent money for groceries used to run the table, that fact did not make all the earnings or savings hers. But it appears conclusively that the husband furnished part of the money for that purpose, and it is conceded he had several hundred dollars in this real estate aside from this board and rent money. From the evidence before me it appears that John Galluccio ran up over $3,000 indebtedness between January, 1906, and the time he filed his petition in bankruptcy, none of which has been paid; that December 28, 1905, he executed this deed to his wife, and so far as appears retained it in his own possession, and it was not of record. Shortly before he failed and filed his petition he and his wife made statements as hereinbefore set forth. Evidently they did not take into consideration the mortgage, or consider the effect of their admissions so far as that was concerned. Probably they thought the bankruptcy proceedings would end the whole matter, and had no idea the mortgage could be reached. I think that, from what Galluccio and his wife did and the statements and admissions they made, the inference is inevitable that they intended to put the real estate in the wife's name, that he should run up a large indebtedness, and then go into bankruptcy. I am of opinion that there was an intent on the part of John Galluccio, grantor, and Angelina Galluccio, his wife, grantee, to transfer the property to her for the purpose of hindering, delaying, and defrauding his creditors, those then existing and those that might exist. I think the deed was kept from record for the purpose of carrying out the intent, that in fact the wife never had the deed, that there was no delivery until it was recorded August 10, 1906, and that there was no adequate consideration therefor.

As to the Dolendes there is no evidence of fraud or deceit. They took title from both John and Angelina Galluccio, and paid full consideration in cash and by giving the mortgage mentioned. That mortgage to the extent of some $700 Mrs. Galluccio has; but in equity it belonged to John Galluccio when he filed his petition in bankruptcy, and now belongs to his trustee in bankruptcy. The bill of complaint may be amended, so as to allege that Galluccio owed debts in excess of his assets, etc. There will be a decree that the mortgage belongs to the trustee in bankruptcy, and that he may recover same, and all sums due or to grow due thereon, and that Angelina Galluccio shall assign and deliver same to the trustee, and also enjoining and restraining the Dolendes from making any further payments thereon to Angelina Galluccio, and directing that payments shall be made to the trustee. I do not think the action has entailed any great hardships on the Dolendes. They were necessary parties. It was impossible to tell in advance just what the evidence would disclose.

This disposition of the case is fully warranted under the bankruptcy act (Act July 1, 1898, c. 541, subd. E, § 70, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]) and the decisions (Mueller v. Bruss, 8 Am. Bankr. Rep. 442, 112 Wis. 406, 88 N. W. 229; Sheldon v. Parker, 11

Am. Bankr. Rep. 152, 66 Neb. 610, 92 N. W. 923, 95 N. W. 1015; Beasley v. Coggins, 12 Am. Bankr. Rep. 355, 48 Fla. 215, 37 South. 213; In re Yukon Woolen Co. (D. C.) 2 Am. Bankr. Rep. 805, 96 Fed. 326; In re McNamara, 2 Am. Bankr. Rep. 566; In re Rodgers, 11 Am. Bankr. Rep. 79, 125 Fed. 169, 60 C. C. A. 567; In re Butterwick [D. C.] 12 Am. Bankr. Rep. 536, 131 Fed. 371; Collier on Bankruptcy [6th Ed.] 591, 612; Baldwin v. Short, 125 N. Y. 553, 559, 560, 26 N. E. 928; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; Dewey v. Moyer, 72 N. Y. 70). See, also, Parker v. Black (D. C.) 16 Am. Bankr. Rep. 202, 143 Fed. 560; Off v. Hakes, 15 Am. Bankr. Rep. 697, 142 Fed. 364, 73 C. C. A. 464; Pond v. N. Y. Exc. Bank (D. C.) 10 Am. Bankr. Rep. 343, 124 Fed. 992; Lawrence v. Lowrie (D. C.) 13 Am. Bankr. Rep. 297, 133 Fed. 995.

This is not the case of a preference, but subdivision "e" of section 70 of the act is explicit that the action may be maintained by the trustee, and the cases hold that a judgment by the creditor or trustee is not necessary. When there is no adequate consideration for the transfer, or when there is intent to cheat, defraud, hinder, or delay, the action may be maintained. It must appear that the property of the bankrupt is not sufficient to pay his creditors in full. This should be alleged, and there will be an amendment accordingly. The proof is in the case, and courts will not disregard the merits on a technicality or error in pleading, when the evidence is before them.

While here we find antecedent creditors, the general rule which controls the decision of this case, supported by the numerous cases cited, is thus stated in 20 Cyc. 423:

"(c) Subsequent Creditors. (1) General Rule. The general rule is that a voluntary conveyance cannot be set aside at the instance of subsequent creditors, in the absence of proof that the conveyance was made with actual fraudulent intent. Where, however, a conveyance is made with the intent to defraud subsequent creditors, or there was secrecy in the transaction by which knowledge of it was withheld from such creditors, who dealt with the grantor upon the faith of his owning the property transferred, or the transfer was made with a view of entering into some new and hazardous business, the risk of which the grantor intended should be cast upon the parties having dealings with him in the new business, such conveyance is fraudulent as to subsequent creditors, and may be attacked by them. However, a mere expectation of future indebtedness, or even an intent to contract debts, if it be only an intent, not coupled with a purpose to convey the property in order to keep it from being reached by the creditors, will not make the deed invalid as against such future creditors."