COMFORT v. ROBINSON.

1. LIMITATION OF ACTIONS—FRAUD—NOTICE.

   In an action for fraud and deceit, it appeared that in 1893 plaintiff and her husband entered into a land contract with defendant, by the terms whereof they deeded certain property and executed a promissory note, upon the payment of which note defendant agreed to deed to them certain other property. To secure the performance of the contract upon the part of defendant, he executed a mortgage upon the property conveyed by plaintiff and her husband. Plaintiff's husband died in 1898, shortly after a subpœna had been served upon plaintiff giving notice that the property which defendant had agreed to convey was being sold under mortgage foreclosure. Plaintiff at this time was suffering from nervous prostration, was unfamiliar with business affairs, and, relying upon the promises of defendant, who acted in the capacity of a friend, to deed the property under the contract, and that he would cancel the note given by plaintiff and her husband, she released the mortgage given by defendant. In 1904, defendant informed plaintiff that he could not carry out the terms of the contract, and in 1906 she sued for fraud and deceit in inducing her to release defendant's mortgage. Held, that, as defendant had acted in the capacity of a friend, and had lulled plaintiff into confidence by his repeated promises to convey the property under the contract, he was estopped to plead the statute of limitations, since he cannot make the ignorance which enabled him to perpetrate the fraud the basis of his defense.

2. HUSBAND AND WIFE — PROPERTY RIGHTS — SURVIVORSHIP — MORTGAGES.

   The interest of a wife in a land contract executed by herself and her husband, whereby certain property was to be deeded to them, was not an interest in personalty, and, upon the death of the husband, the entire interest passed to her by right of survivorship. And a mortgage running to her and her husband, given to secure the performance of the contract, was a mere incident to the obligations of the contract, and followed the devolution of the title thereto.

Error to Wayne; Mandell, J. Submitted October 13, 1908. (Docket No. 12.) Decided December 21, 1908.

Case by Jennie Comfort against Edwin B. Robinson and George E. Moody for fraud. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Affirmed as to defendant Moody, and reversed as to defendant Robinson.

*Frederic T. Harward* and *Jefferson G. Thurber*, for appellant.

*Graves, Hatch & Wasey*, for appellee Robinson.

*Seward L. Merriam*, for appellee Moody.

BLAIR, J. Plaintiff and her husband, on the 3d day of January, 1893, entered into a land contract with defendant Robinson, in accordance with the terms whereof they deeded to Robinson store property in Kalamazoo valued in the contract at $5,000 and a vacant lot in Detroit valued therein at $2,000. The Comforts also executed and delivered to Robinson their promissory note for $1,000 for the balance of the purchase price of 40 lots in Detroit, known as the Sunnyside property, which defendant Robinson agreed in the contract to convey to them upon payment of the promissory note. To secure performance of the contract on his part, Robinson executed to the Comforts a mortgage for $5,000 upon the store property in Kalamazoo. Plaintiff's husband died May 28, 1898, and soon thereafter defendant Robinson, who had had business relations with Mr. Comfort, and who had been regarded by them and trusted by them as a friend and a thoroughly honorable man, called upon Mrs. Comfort.

"He said if I had—he was talking in my interest so he said—and he said, if I could dispose of these lots, I would be able to realize some. My husband being dead, it would be a good thing, and we talked it over in a friendly manner, and he proposed that we have a meeting, and we advised about it, and take the best means of deciding about the property so that I could dispose of it, and then he said: 'Mrs. Comfort, you should have someone advise you about this, and it would be proper.' And I acquiesced

in that, and, after further talk, I proposed Mr. Moody, and he immediately assented to that and said he thought Mr. Moody would be a very good man, and then we talked about the matter of the meeting."

In accordance with their arrangement, the parties met on the 3d day of August, 1898, at the office of Mr. William Atkinson, where defendant Robinson proposed that, if plaintiff would discharge the $5,000 mortgage upon the Kalamazoo property, he would execute to her "a clear deed of the Sunnyside property," releasing her from payment of the $1,000 note. Plaintiff's adviser and Mr. Atkinson advised her that this was a desirable arrangement for her, and that she could rely with confidence upon Mr. Robinson's agreement to deed the Sunnyside property to her.

"He said to me, and said individually and they said jointly, and repeated it over and over, that I was to get a deed of the property. I was weak at the time, and I had that hold against the property, and he said: 'Mrs. Comfort if you will discharge that mortgage of $5,000 on the Kalamazoo property, I will have a chance to sell it and I can't sell it unless you do and clear up the property, and I will give you a clear deed of Sunnyside property.' Those were his words, and I will stake my life on it."

In accordance with the advice received, plaintiff executed a discharge of the mortgage, which was duly recorded in the register of deeds' office for Kalamazoo county on August 9, 1898. From some time prior to this agreement up till 1904 or 1905, plaintiff was a wreck from nervous prostration. She was in bed for weeks at a time, had sinking spells, and was doctoring for it all the time. A day or two after she discharged the mortgage, plaintiff called upon Mr. Robinson for her deed; "and he spoke indefinitely about it and put me off. I can't remember the words he used, but he said something like 'not now,' and put me off, and I had still confidence in his word and went away." She saw him several times after this, and he put her off to some future time. After an inter-

val of several years and in December, 1904, or January, 1905, defendant Robinson told plaintiff that he could do nothing for her.

"That is what opened my eyes. It was hard to open my eyes, for I thought he would do as he agreed. * * *

"Q. The only thing since 1898, up to the present time, that has opened your eyes is the fact that Mr. Robinson finally told you he could not do anything more for you?

"A. Two facts. He failed all through that time to fulfill his promise, and I was still hoping that he would. Along in 1904 and 1905, he gave me word that he could not do anything for me and that would open anybody's eyes, if I had not had the confidence in him that I had."

Up to the time that defendant Robinson definitely refused to do anything for her, plaintiff believed that he would keep his word and execute the deed to her. In the fall of 1906 plaintiff commenced suit against defendants for fraud and deceit, alleging, among other things, that she learned of the fraud practiced upon her—

"Within the past two years, * * * that when said defendant, Edwin B. Robinson, promised to deed the said 40 lots of the Sunnyside subdivision to the said plaintiff upon her giving to him a discharge of the $5,000 mortgage as aforesaid, the said defendant, Edwin B. Robinson, had no intention of carrying out the same, but well knew that he was unable then and there to deed the said lots to the said plaintiff, the said lots having then passed out of the possession and control of the said defendant, Edwin B. Robinson."

The defendant Moody is charged with conspiring with defendant Robinson to defraud plaintiff by advising and persuading her to enter into the agreement and to discharge the mortgage. Defendants pleaded the general issue, and gave notice of the statute of limitations. At the close of plaintiff's proofs, both defendants moved for a verdict in their favor. The court granted the motion of defendant Moody, and thereupon the following occurred:

"During the argument, upon the motion of counsel for the defendant Robinson to direct a verdict, the fact was

adverted to that a mortgage on the Sunnyside property had been foreclosed. And thereupon the court announced as follows:

"*The Court:* ' I will hear that proof in this case. I will withdraw the determination until I hear the testimony.'

"And thereupon counsel for the defendant Robinson offered in evidence the records and files of the case in the circuit court for the county of Wayne, in chancery, Calendar No. 18,738, in which Lawrence Snell, as administrator, was complainant, and Edwin B. Robinson et al. were defendants, and especially the subpœna in the case bearing date March 15, 1898, showing service of process upon Jennie Comfort in March, 1898, and that the decree in the case was entered upon February 27, 1899. This evidence was offered by counsel for defendant Robinson for the purposes of the motion. The bill of complaint described the property known as the Sunnyside property.

"*The Court:* ' For the purpose of determining it on the statute of limitations, and that is the only thing I am dealing with, I think enough has been shown by this offer. It is really not necessary to have the other matter determined.'"

We agree with the circuit judge that the proofs in the case "utterly fail to connect George E. Moody with any wrong or fraud committed upon the plaintiff or any of her rights." As to the defendant Robinson, the court held that a prima facie showing of fraud was made, and we also agree with the court in this respect. The court, however, held that plaintiff must conclusively be deemed to have had actual or constructive notice of the fraud in consequence of the service of the subpœna upon her in the foreclosure proceedings, and he therefore directed a verdict in favor of defendant Robinson, for the reason that plaintiff's cause of action was barred by the statute of limitations. In the course of his opinion the court said:

"It appears in evidence now that this very property that was to be transferred to her under this agreement that she claims she had with Mr. Robinson was taken out of the possession of Mr. Robinson in a foreclosure suit begun on March 5, 1898, the very year they had their dealings, and it appears that a subpœna was on that day

served on Mrs. Comfort which gave her notice that the mortgage that she held on that property was to be foreclosed. Now, the rule of law is that one should be diligent. One cannot sleep on one's rights and afterwards complain of another's wrongdoing, but one must exercise some degree of diligence at least, and the excuse that Mrs. Comfort gives for not beginning the suit within the time allowed by the statute was that she had no reason to suspect, and she was not put upon inquiry, that no facts came to her attention to make her ask or make inquiry so that she could find out what the intention of Mr. Robinson was at the time he made the promise. It is in evidence, and uncontradicted, that at the very time or about the time this matter was under negotiation there was a lawsuit of which she had knowledge pending on the chancery side of this court to foreclose a mortgage on this land, and it is in evidence that the land was subsequently sold, and it appears that for six years and upwards she had expected Mr. Robinson to transfer the property to her that she should have known, if she did not know, that he had lost by reason of the foreclosure of the mortgage away back in 1898. So it seems to me that I would be amiss in my duty in interpreting the law if I did not instruct you that whatever rights she may have had she has lost by reason of lapse of time."

The most favorable construction that the testimony will admit of must be indulged in in plaintiff's behalf before the court may properly hold that she has not made out her case. The fraud relied upon in this case is that the defendant Robinson, practicing upon the trusting confidence of the bereaved widow of his friend in his honor as a man and his professed desire to help her, secured from her $7,000 worth of property for which he never intended to, and as a matter of fact never did, give her any equivalent whatever. The testimony warrants the inference that plaintiff did not know that defendant Robinson could not carry out his agreement of August 3, 1898, or that he did not intend to. On the contrary, the jury would have been justified in finding that down to December, 1904, she steadfastly believed that he could and would do as he had promised. The direction of a verdict, therefore, can

only stand upon the finding that the service of the subpœna upon her put her upon inquiry, and that she must be held responsible for the facts which such inquiry would have developed. The subpœna was served upon plaintiff March 5, 1898, during the period when she was, according to the record, suffering from nervous prostration. On August 3, 1898, perhaps in consequence of the foreclosure proceedings, defendant Robinson induced her to discharge her mortgage in consideration of her release from payment of the note and his promise to deed the Sunnyside property to her. It is not reasonable to believe that plaintiff would have made or her advisers would have recommended the making of the agreement if they had known the facts. The making of the agreement was a representation by defendant Robinson that he could carry it out, and that inquiries were unnecessary. The death of her husband, her shattered nervous system, her unfamiliarity with business, her trust in defendant's friendship and desire to assist her, differentiate the plaintiff's case from the usual case of fraud. That she maintained her trust in defendant much longer than others would have done, may be cause for surprise, but, in the light of her undisputed testimony, such trust must be deemed established. We are of the opinion that the service of the subpœna must be considered in connection with the plaintiff's condition, the representations of defendant, and the agreement actually made, in determining whether plaintiff should be charged as a matter of law with knowledge of the facts concerning the foreclosure proceedings. If defendant knew that plaintiff was, in fact, ignorant of the import of the foreclosure proceedings or that they concerned her, and obtained the discharge of the mortgage because of such ignorance, he cannot now make the very ignorance which enabled him to perpetrate the fraud the basis of his defense.

It is further contended that, as the mortgage ran to her husband and herself, plaintiff did not acquire title to the mortgage as survivor (*Wait* v. *Bovee*, 35 Mich. 425), that there was no evidence that plaintiff was the legal

representative of her deceased husband, and that, under her declaration, she could not recover for an injury to her individual interest.   Plaintiff was the owner of the lot in Detroit which she had purchased with money earned by teaching school, and she testified:

"At that time I owned property in Kalamazoo.   I got it by gift personally from my husband.   There was a mortgage upon it which I cleared with my own school money."

The Sunnyside lots were to be deeded to plaintiff and her husband, and, if such deed had been made prior to Mr. Comfort's death, plaintiff would have become the owner of the property by right of survivorship.   The interest of plaintiff under the land contract was not an interest in personalty, and, upon the death of her husband, the entire interest passed to her by right of survivorship. *Bowen* v. *Lansing*, 129 Mich. 117 (57 L. R. A. 643). Since the mortgage was a mere incident to the obligations of the land contract, it followed the devolution of title thereto.

The judgment is reversed, and a new trial granted as to defendant Robinson, and affirmed as to defendant Moody.

GRANT, C. J., and HOOKER, MOORE, and McALVAY, JJ., concurred.