In re BERRY.

(District Court, E. D. Michigan, S. D.    September 11, 1917.)

No. 3305.

1. BANKRUPTCY ⬤⟶293(4)—PLENARY PROCEEDINGS—JURISDICTION OF COURT OF BANKRUPTCY.

Where respondent answered on the merits a petition of the trustee in bankruptcy praying for an order requiring respondent to execute and deliver in blank an assignment of certain stock certificates upon fulfillment of an executory contract with the bankrupt and his wife for the acquisition by the latter of certain corporate stock and land, and made no objection on hearing before the referee or on hearing on the petition for review to the jurisdiction of the court of bankruptcy, an objection, first made in a brief filed in the proceedings on the petition for review, that the court was without jurisdiction under Bankruptcy Act July 1, 1898, c. 541, § 23b, 30 Stat. 552 (Comp. St. 1916, § 9607), providing that suits by the trustee shall only be brought in courts in which the bankrupt might have brought them, had no proceedings in bankruptcy been instituted, unless by consent of the proposed defendant, because the property was in the possession of respondent, must be deemed waived.

2. BANKRUPTCY ⬤⟶254—TRUSTEE—RIGHTS OF.

Under Bankruptcy Act July 1, 1898, § 70a (5), being Comp. St. 1916, § 9654, declaring that the trustee of the estate of a bankrupt shall be

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vested with the title of the bankrupt as of the date he was adjudicated a bankrupt to the property, except in so far as it is exempt, which prior to the filing of the petition the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process, an adjudication in bankruptcy does not terminate or dissolve the contractual relations of the bankrupt, but vests in the trustee an option to assume or renounce executory contracts of the bankrupt.

3. BANKRUPTCY ⊶140(½)—TRUSTEE—RIGHTS OF—WHAT LAW GOVERNS.

In determining whether any particular property of a bankrupt might have been transferred by him, or levied upon and sold under judicial process against him, prior to the filing of the petition for the purpose of ascertaining whether it passes to the trustee in bankruptcy, the laws of the state in which the property is located govern.

4. HUSBAND AND WIFE ⊶14(10)—TENANCY BY ENTIRETY—NATURE OF.

In Michigan, the interest of either a husband or wife in land held by them as tenants by the entirety cannot be sold, incumbered, or in any manner transferred by one tenant without the consent of the other, nor can the interest of one be levied upon and sold under judicial process against him alone.

5. HUSBAND AND WIFE ⊶14(2)—TENANCY BY "ENTIRETY"—CONTRACTS.

In Michigan, the interest of a husband and wife in land under a contract for its purchase by both is an estate by the entirety.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Entirety.]

6. BANKRUPTCY ⊶143(1)—TRUSTEE—RIGHTS OF—TENANCY BY ENTIRETY.

Under Bankruptcy Act July 1, 1898, § 70a (5), vesting the trustee with the property which the bankrupt could transfer, or which might be levied upon and sold under judicial process against him, the interest of a Michigan bankrupt in land which he and his wife had contracted to purchase does not pass to the trustee for the rights of the parties are those of tenants by the entirety.

7. HUSBAND AND WIFE ⊶14(1)—TENANCY BY ENTIRETY—PERSONAL PROPERTY.

In Michigan, there can be no estate by the entirety in personal property.

8. HUSBAND AND WIFE ⊶14(2)—TENANCY BY ENTIRETY—CREATION.

A corporation organized under Pub. Acts Mich. 1897, No. 230, entitled "An act to provide for the formation of corporations for the purpose of owning and improving lands and other property kept for the purpose of summer resorts or for ornament, recreation or amusement," which provides in section 3 that every such corporation shall be capable in law of owning, holding, or purchasing and disposing of, in such manner as a majority of the stockholders shall direct, any real or personal property, and in section 21 that, whenever any such corporation shall cause to be platted any part or portion of its lands, it may by its by-laws provide the manner in which the lot or lots may be assigned, allotted, or confirmed to its several stockholders, provided that any such lot or lots so assigned, allotted, or confirmed shall be deemed and considered as appurtenant to shares of capital stock, by its by-laws authorized the board of directors to deed to each incorporator one or more lots of the property owned by the corporation, each deed to contain a condition that the grantee, his heirs, and assigns, should never convey the lot or lots to any person except an authorized stockholder, and that no sales should be made to any person not a stockholder in the corporation. An incorporator and stockholder, who received a warranty deed to a lot which contained a condition declaring that it was appurtenant and attached to certain shares of capital stock, and that such lot should not, during the existence of the corporation, be sold, separated from the stock or contrary to the rules of the corporation, entered into a contract with the bankrupt and his wife to transfer to them his stock and convey the lot by a deed subject to a

similiar condition. *Held*, that the bankrupt and his wife became tenants by the entirety in the contract for the purchase of the land, subject to be divested upon breach of the condition subsequent, which was attached to the deed of their grantor and would be attached to their deed, and hence the interest of the bankrupt in the land did not pass to his trustee.

9. HUSBAND AND WIFE ⬦═▷14(2)—TENANCY BY ENTIRETY.

In such case, the provision in the act of 1897 authorizing the corporation to provide the manner in which lots might be assigned, allotted, or confirmed to stockholders did not prevent the passage of the legal title to such land, and so preclude the bankrupt and his wife from becoming tenants by the entirety.

10. CORPORATIONS ⬦═▷445—CONVEYANCES—PERSONAL PROPERTY.

Nor did the provision in section 14 that the stock of every such corporation shall be deemed personal property prevent passage of the legal title, and so preclude the bankrupt and his wife from becoming tenants by the entirety, for that provision was obviously inserted to make it clear that, though the corporation held land, the stock should not for that reason be treated as land.

11. BANKRUPTCY ⬦═▷138(1)—TRUSTEE—RIGHTS OF—RENUNCIATION.

Where the ownership of corporate stock, apart from any interest in land conveyed by the corporation as appurtenant to the stock, would be of no benefit to the trustee in bankruptcy, and the land could not be reached, the trustee should renounce any interest which he might be entitled to assert against the stock by virtue of a contract by the bankrupt and his wife for acquisition of the stock and the land.

In Bankruptcy. In the matter of the bankruptcy of Frank Berry. Plenary proceedings by the trustee against one Quinn. The petition of the trustee was denied by the referee, and he petitions to review the order. Petition of trustee denied.

Paul R. Dailey, of Detroit, Mich., for trustee.

Bishop & Kilpatrick, of Detroit, Mich., for respondent.

TUTTLE, District Judge. This matter is before the court on a petition to review an order of the referee in bankruptcy in proceedings brought by the trustee against one Quinn, respondent herein, for the recovery of certain property alleged by said trustee to belong to the estate of the bankrupt. The referee by his order denied the petition of the trustee, and the latter seeks to review such order here. The question involved is whether the trustee is entitled to complete a certain executory contract made by the bankrupt and his wife for the purchase, from respondent, of certain land connected with the ownership of shares of stock in an incorporated summer resort association.

The corporation in question, the Hickory Island Company, was organized under Act 230 of the Michigan Public Acts of 1897 (sections 10034–10056 of the Compiled Laws of Michigan of 1915), entitled "An act to provide for the formation of corporations for the purpose of owning, maintaining and improving lands and other property kept for the purposes of summer resorts or for ornament, recreation or amusement." Section 3 of the act in question provides that every such corporation shall be "capable in law of owning, holding or purchasing and disposing of, in such manner as a majority of the stockholders shall direct, any real or personal property or estate whatever," etc.

⬦═▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Section 14 of the act provides that "the stock of every such corporation shall be deemed personal property, and may be transferred as shall be prescribed by this act and by the by-laws of the corporation." Section 21 of the act is as follows:

"Whenever any such corporation shall cause to be platted any part or portion of its lands in the manner prescribed in the foregoing section of this act, it may by its by-laws, provide the manner in which the lot or lots may be assigned, allotted or confirmed to its several stockholders, and the terms and conditions upon which the same shall be held by them: Provided, That any such lot or lots so assigned, allotted or confirmed to such stockholders shall be deemed and considered as appurtenant and attached to a certain share or shares of capital stock in such corporation, which shall be designated at the time of such assignment, allotment or confirmation, and any assignment, transfer or other disposition of such capital stock shall be held to carry with it, the right to such lot or lots so appurtenant or attached to the same; and it shall not be lawful for such stockholder to in any manner whatsoever, sell, assign, transfer or dispose of any right, title, claim or interest he may have or acquire in [an] any lot or lots assigned, allotted or confirmed under such by-laws and regulations, separated or detached from the share or shares of capital stock to which it shall be appurtenant or attached."

The by-laws of the corporation in question authorize the board of directors to deed to each incorporator thereof one or more lots of the property owned by the corporation, each deed to contain a condition "that the claimant therein, his heirs and assigns, shall never convey said lot or lots to any other person except a stockholder in this corporation; said condition to be valid and operative so long as this corporation shall continue in existence." They also provide that the lots not sold to incorporators may be sold to others on the same condition, no sales to be made "to any person who is not a stockholder in the corporation to the extent of one share of stock for each five feet front of the lot he desires to buy."

The respondent, who was an incorporator and stockholder of this corporation, received from such corporation a warranty deed to one of these lots, lot 14, which deed was in the usual form of a warranty deed, except that it contained the following conditional clause:

"Provided, however, and this conveyance is upon the express condition * * * that said lot is appurtenant and attached to certain shares of capital stock of the party of the first part * * * issued to the party of the second part and dated of even date herewith, and said lot or any interest therein shall never, during the existence of said corporation, the party of the first part, be sold, assigned, transferred or disposed of separated or detached from said shares of capital stock or contrary to the rules of the corporation governing the transfer of capital stock as that shall at the time of said transfer be in force."

The certificate of the shares of stock referred to in said deed stated that respondent was the owner of such shares of stock "appurtenant and attached to lot 14 of the said company's subdivision of the southeast part of Hickory Island, and not transferable separate from said lot," and that such stock was transferable only by the consent of the board of directors of said corporation and on compliance with the rules and by-laws thereof. Thereafter, and before the filing of the petition in bankruptcy herein, respondent entered into a contract with the bankrupt and his wife, jointly, for the sale to them of

said lot and shares of stock for the sum of $368.20, payable in equal monthly installments. This contract, in addition to the usual recitals in a land contract, contained the following clause:

"And it is further agreed that the parties of the second part agree to accept a deed of the within described property subject to all conditions set forth by the Hickory Island Company, said deed to be of the same printed form as all other landholders in said subdivision, these conditions being a part of the purchase price of said lot."

The printed form of deed thus referred to was the same as that received by respondent as already mentioned. On this contract there is still due $185.29, but the contract has not been abandoned or terminated and the respondent recognizes the rights of bankrupt and his wife therein.

The trustee filed a petition with the referee in the bankruptcy proceedings praying for an order requiring the respondent to execute and deliver in blank an assignment of the said stock certificate upon the fulfillment of the contract with respondent, on the ground that the interest of the bankrupt therein became by his bankruptcy vested in the trustee, who was authorized to complete said contract on behalf of the estate of the bankrupt, and that thereupon the trustee would acquire the title therein which would otherwise have been acquired by the bankrupt. The trustee also contended that this interest in said stock is connected with, and carries with it, the same kind of an interest in the lot already mentioned, which is an interest in personal property. The referee declined to make such an order, ruling that the interest of the bankrupt and his wife in the land contract covering said lot constituted an estate by the entirety, and that, therefore, the interest of the bankrupt therein did not vest in this trustee, but an order was entered requiring the respondent, upon the payment to him by said trustee, but not out of the funds of the bankrupt estate, of the sum due him as already mentioned, to execute an assignment of the certificate of stock to the bankrupt and his wife, and to deliver the same to the bankrupt, who was restrained, by such order, from transferring such stock without the further order of the court. The trustee thereupon filed his petition to review such order, alleging that it was erroneous because it "failed to direct respondent, upon payment to him of the sum of $185.29 by the trustee, but not from the assets of the bankrupt's estate, to execute an assignment of certificate No. 14, representing eight shares of the capital stock of the Hickory Island Company, to petitioner herein, said trustee, and to deliver the said certificate to petitioner."

The questions, therefore, here presented concern and involve the nature and extent of the rights of the trustee in this stock and lot.

[1] A preliminary objection to the jurisdiction of the bankruptcy court to entertain the present petition should be first considered. The respondent contends, first making the objection in this court, that as he is in possession of this certificate of stock, claiming adverse rights therein, the rights of the respective claimants in this property cannot be determined by the bankruptcy court in these proceedings, relying on

section 23b of the Bankruptcy Act (Comp. St. 1916, § 9607), providing that:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

The respondent raised no objection before the referee to his juris-diction in these proceedings, answering the petition of the trustee upon the merits, going to a hearing before the referee and another hearing in this court on the petition for review, without making such objection, and presenting it first in his brief in this court. Under these circum-stances, it must be held that the respondent has consented to the in-stitution of these proceedings in the bankruptcy court, and he has therefore waived his right to object to the jurisdiction of the court to entertain such proceedings. In re Connolly (D. C.) 100 Fed. 620; In re Steuer (D. C.) 104 Fed. 976; Ryttenberg v. Schefer (D. C.) 131 Fed. 313; Sheppard v. Lincoln (D. C.) 184 Fed. 182; Detroit Trust Company v. Pontiac Savings Bank, 196 Fed. 29, 115 C. C. A. 663.

The question as to the rights of the trustee in bankruptcy in property held by the bankrupt under the circumstances here presented appears never to have been judicially determined. No case has been cited, and I have been unable to find any, involving precisely the same question, which apparently is here presented for the first time.

[2] Section 70a (5) of the Bankruptcy Act (Comp. St. 1916, § 9654) provides that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to exempt property, to all "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

The question presented, therefore, is whether the interest of the bankrupt in this property prior to the filing of the petition was prop-erty which "he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Of course, the mere fact that this interest was that of a vendee in a contract does not prevent it from passing to the trustee in bankruptcy. In re Clark (D. C.) 118 Fed. 358; Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719. As was said in the case last cited:

"An adjudication in bankruptcy does not dissolve or terminate the contrac-tual relations of the bankrupt. * * * Its effect is to transfer to the trus-tee all the property of the bankrupt, except his executory contracts, and to vest in the trustee the option to assume or to renounce these."

[3] It is well settled that whether any particular property of a bankrupt might have been transferred by him or levied upon and sold under judicial process against him prior to the filing of the petition in bankruptcy is a question to be determined by the laws of the state in which such property was located. Hesseltine v. Prince (D. C.) 95 Fed. 802; In re Shenberger (D. C.) 102 Fed. 978; In re Butterwick (D. C.) 131 Fed. 371; In re Waite-Robbins Motor Co. (D. C.) 192 Fed. 47; Gibbons v. Goldsmith, 222 Fed. 826, 138 C. C. A. 252.

[4-6] It is the well-established rule in Michigan that the interest of either a husband or wife in land held by them as tenants by the entirety cannot be sold, incumbered, or in any manner transferred by either one of such tenants without the consent of the other. Naylor v. Minock, 96 Mich. 182, 55 N. W. 664, 35 Am. St. Rep. 595; Bauer v. Long, 147 Mich. 351, 110 N. W. 1059, 118 Am. St. Rep. 552. 11 Ann. Cas. 86; Ernst v. Ernst, 178 Mich. 100, 144 N. W. 513, 51 L. R. A. (N. S.) 317. Nor can such interest be levied upon and sold under judicial process against one of such tenants by the entirety. Vinton v. Beamer, 55 Mich. 559, 22 N. W. 40; Schliess v. Thayer, 170 Mich. 395, 136 N. W. 365.

The interest of husband and wife in land under a contract for the sale of such land to such husband and wife is an estate by the entirety and subject to the rules just stated. Comfort v. Robinson, 155 Mich. 143, 118 N. W. 943. If, therefore, the interest of the bankrupt in the lot here involved was an interest in an estate by the entirety, such interest did not pass to his trustee, and the latter is not entitled to a conveyance of such interest, or to restrain the bankrupt from a conveyance thereof. In re Beihl (D. C.) 197 Fed. 870; In re Meyer, 232 Pa. 89, 81 Atl. 145, 36 L. R. A. (N. S.) 205, Ann. Cas. 1912C, 1240. As was said in the case first cited:

"This 'venerable and unique common-law estate,' to use Mr. Justice Stewart's phrase, is founded upon the fiction that husband and wife are one person, and not two; but it is nevertheless conceived of as giving the entire interest in the whole property, not to the two jointly, but simultaneously to each, and as giving it without possibility of severance. These completely interfused interests cannot be divided by partition; neither owner can dispose of it except as a whole, and neither can dispose of it without the concurrence of the other. But, from another point of view, each has only an expectancy, for, upon the death of one, the other takes the whole in severalty, not by survivorship, but by the original title. Of course, it is possible to reason about such a perplexing abstraction, and rules have been gradually evolved to govern the necessarily conflicting interests that are thus compelled to live together without the possibility of divorce. But, as may be supposed, while these rules may be the result of reasoning in forms of the syllogism, they are apt to be artificial, and sometimes they lead to a contradiction in terms. For example: Each of these curious tenants owns what may be a valuable interest, but cannot exercise the most distinctive characteristic of ownership—the power of disposition. The husband owns the entire estate, but so does the wife, and therefore, if he should be permitted to sell it, he would be selling her property. Nor may he incumber it, except contingently—since incumbrance may be the first step to a sale, and this would be to pledge her property to his creditors. Nor may his creditors seize it by any process of the law, for she owns it all, and, unless he survives her, it will never be either at his disposal or at theirs."

[7] It is, however, equally well settled in Michigan that there can be no estate by the entirety in personal property. Wait v. Bovee, 35 Mich. 425; Luttermoser v. Zeuner, 110 Mich. 186, 68 N. W. 117; State Bank of Croswell v. Johnson, 151 Mich. 538, 115 N. W. 464.

[8] I am of the opinion that the interest in this land acquired by the bankrupt through the contract for the purchase thereof by him and his wife from the respondent was an interest in an estate by the entirety in real property. It cannot, of course, be denied that the land itself was, while owned by the corporation already referred to, real

property. The corporation was expressly authorized by the statute already considered to dispose of "in such manner as a majority of the stockholders shall direct any real or personal property." The stockholders authorized the corporation to deed this lot to the respondent subject to the condition above mentioned. In pursuance of this authority the corporation conveyed such lot by warranty deed and issued the aforesaid stock to the respondent, subject to said condition.

It is quite clear that this deed was a deed of land containing a condition subsequent restricting the power of alienation of such land in the manner already referred to and as expressly authorized, and therefore made legal, by the provisions of the statute hereinbefore quoted. It seems to me equally clear that, when respondent contracted with the bankrupt and his wife to convey to them this land subject to the same condition, he thereby agreed to sell them an interest in real property subject to a condition subsequent on the breach of which such interest might revert to him. Therefore, under the rules just stated, the bankrupt thus acquired an interest, with his wife, in an estate by the entirety in this land in fee, subject to be divested upon the breach of the condition subsequent attached thereto.

[9] It is urged that the provision in the statute quoted, authorizing the corporation to "provide the manner in which the lot or lots may be assigned, allotted or confirmed," indicates an intention on the part of the Legislature to limit the power of the corporation, in disposing of these lots, to a transfer in the nature of a lease or license to use such lots. The words, however, "assigned, allotted or confirmed," are certainly broad enough to include a conveyance of the fee subject to the condition attached. It seems to me that by such words it was merely intended to refer to the condition thus attached to the transfer of these lots, the effect of which would naturally make such transfer in the nature of an assignment or allotment of these lots to the stockholders as distinguished from an absolute and unconditional conveyance thereof to strangers. It will, moreover, be noted that a clause in the same section of the statute containing the words just quoted authorizes the stockholders of the corporation to provide by the by-laws "the terms and conditions upon which the same (the lots) shall be held by them," subject to the aforementioned condition. It will also be noted that by the by-laws previously referred to the corporation was authorized to "convey" its lots by deed, "each deed to contain a condition," etc. There is, therefore, in my opinion, nothing in the statute which was intended to, or did, have the effect of limiting the power of the corporation to conditionally convey an interest in its real property, or having the effect of making the interest of one receiving a deed from the corporation an interest in personal property.

[10] It is also contended that the language of the act, already quoted, providing that "the stock of every such corporation shall be deemed personal property," indicates an intention to make the interest of its stockholders in the land appurtenant to such stock personal property. It seems probable that the motive prompting the Legislature in thus expressly providing that the stock of such a corporation should be deemed personal property was to avoid the possibility of any doubt

as to whether, in view of the fact that such corporation was organized to hold real property, its stock might not also be considered real property. It is well known that at one time there was some doubt on this question, and it would not be strange that the Legislature should wish to make it clear that this stock should be deemed personal property. But, whatever the motive prompting the enactment of this section of the statute, the application of such section is expressly limited to the stock of such corporation, and I find nothing in the statute which can be construed as evincing an intention to make the interest of the stockholders in lots acquired from the corporation personal rather than real property, simply because the ownership of such lots is attached to the ownership of such stock.

For the reasons thus stated, I am clearly of the opinion that the interest of the bankrupt in this lot did not pass to his trustee, and that the latter is not entitled to any interest therein. In the language of the court in the case of In re Russie (D. C.) 96 Fed. 609:

> "This property is excluded from the description of property given in subdivision 5 of section 70 of the Bankruptcy Act, which describes as one of the classes of property to be taken by the trustee property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. This is not such property, and it is clearly the intention of Congress that property should not pass to the trustee which could not be the subject of conveyance or disposition by the bankrupt at the time the bankruptcy proceedings were inaugurated."

[11] Whether the trustee is entitled to an interest in the stock, aside from any interest in the lot, is a question which it is unnecessary to consider, for the reason that it is apparent that the ownership of such stock apart from any interest in such lot would be of no financial benefit to the estate, but, on the contrary, would be detrimental thereto, as it would subject the latter to the payment of dues for membership in the Association without any rights in the only real advantages arising from such membership. It would therefore be the duty of the trustee to renounce any interest which he might have in such stock. Dushane v. Beall, 161 U. S. 513, 16 Sup. Ct. 637, 40 L. Ed. 791; In re Zehner (D. C.) 193 Fed. 787.

The petition of the trustee should be denied, and an order entered in conformity with the views herein expressed.