**AGRISTOR FINANCIAL CORPORATION, et al., Plaintiffs,**

v.

**Merle E. VAN SICKLE, et al., Defendants,**

**A.O. Smith Corporation; A.O. Smith Harvestore Products, Inc., Defendants-Appellees, Cross-Appellants,**

**West Marion Dairy Farm, Intervenor-Appellant, Cross-Appellee.**

**Nos. 90-2377, 90-2386.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 19, 1992.

Decided July 20, 1992.

Rehearing Denied Aug. 21, 1992.

Christopher G. Hastings, Drew, Cooper & Anding, Grand Rapids, Mich., for defendant.

Jack J. Mazzara, Bruce L. Sendek (argued and briefed), Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Donald E. Egan (briefed), Lee Ann Watson (argued), Lynn Thorpe, Lynn Urkov Thorpe, Katten, Muchin & Zavis, Chicago, Ill., for defendants-appellees, cross-appellants.

John E. Anding, Drew, Cooper & Anding, Grand Rapids, Mich. (argued), for intervenor-appellant cross-appellee.

Before: KEITH and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

## I.  FACTS

The Van Sickle family, consisting of two generations of dairy farm owners and operators, appeal from the district court's grant

of summary judgment in favor of A.O. Smith Corporation ("Smith") and A.O. Smith Harvestore Products, Inc. ("Harvestore") in this complex controversy. West Marion is the Van Sickle family partnership which owns the dairy farm in question. Smith and its wholly owned subsidiary, Harvestore, manufacture, market and lease grain storage units ("silos") which purportedly have characteristics that make them "oxygen-free." Agristor Financing Corporation ("Agristor") is the financial arm of Smith and Harvestore, and was the original plaintiff in this suit.

The Van Sickles acquired two silos from Harvestore, the first, obtained in 1973, was used for storage of corn, and the other, leased in 1980, was used for storage of hay. West Marion alleges that Smith, Harvestore and their agents represented that the silos were "oxygen-free" or "oxygen-limiting," a quality that purported to maintain high protein levels and to increase the nutritional value of the grain stored in the silos. According to Harvestore's alleged representations, dairy cattle raised on the stored grain are more productive and healthier than animals fed from other food sources. Harvestore and Smith allegedly stated that feed from the silos would increase production of milk and butterfat, leading to higher profits.

West Marion alleges that it relied on these representations in acquiring both silos. West Marion asserts that the silos were not oxygen-limiting; the stored grain did not have enhanced nutritional value; and its cattle suffered serious health consequences as a result of spoilage of the stored grain, which was moldy and unsatisfactory. West Marion attributes the deaths of many calves to the stored grain, a situation which allegedly led to expensive veterinary care and protein supplements for its dairy herd. Eventually, West Marion filed for bankruptcy protection allegedly due to the failure of its dairy herd to produce as anticipated. West Marion places the blame for its economic difficulties on the malfunctioning silos.

Judicial proceedings in this case began in November 1986, when Agristor filed a claim against the Van Sickles for replevin of the 1980 silo. In October 1987, the Van Sickles filed a counterclaim against Agristor for fraud, conspiracy to commit fraud, innocent misrepresentation, bad faith, breach of warranty and two RICO violations. Later, the Van Sickles filed a similar complaint against Smith and Harvestore, and the district court consolidated these two actions. The Van Sickles alleged jurisdiction based on diversity of citizenship and the existence of a federal question with regard to their RICO claim.

Agristor moved to dismiss the Van Sickles' claims, and the district court granted the motion on the basis of judicial estoppel. West Marion then successfully filed a motion for permissive intervention as a counter-plaintiff. After District Judge Harvey recused himself before trial, successor Judge Hackett granted the motion for summary judgment filed by Smith and Harvestore, finding that West Marion's claims were barred by the relevant statutes of limitations. Judge Hackett denied West Marion's motion to amend the judgment.

West Marion appeals from this grant of summary judgment and the magistrate judge's limitation of discovery prior to trial. The Van Sickles, as individuals, also appeal from the district court's dismissal of their claims. Smith and Harvestore appeal from the district court's decision to allow West Marion to intervene. This case follows a factual pattern similar to other cases involving Smith and Harvestore, and we first examine the statute of limitations questions.

## II. GRANT OF SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARDS

■ The standard of review for a district court's grant of summary judgment is *de novo*. *Massey v. Exxon Corp.*, 942 F.2d 340, 342 (6th Cir.1991).

The district court held:

Plaintiff's argument fails to provide a credible explanation as to why these experienced farmers did not learn or determine that the Harvestore system was the

source of years of declining dairy production and health problems for their herd of cows.

Since plaintiff failed to file this action (1) within six years of its lease of the second silo; (2) within four years of when it knew or should have known of defendant's allegedly fraudulent scheme; or, (3) within two years of when it knew or should have known of its injuries from the alleged misrepresentation, the court finds plaintiff's fraud and RICO claims barred by their respective statutes of limitation.

Judge Hackett granted Harvestore's and Smith's motion for summary judgment solely on the basis of the various statutes of limitations, though other arguments, such as Smith's non-liability for its subsidiary's actions, were presented.

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980). A court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Id.* at 586, 106 S.Ct. at 1355–56.

## B. ACCRUAL OF FRAUD STATUTE OF LIMITATIONS

Michigan employs a six-year statute of limitations for fraud actions. *See* Mich. Comp.Laws § 600.5813. The issue in this appeal deals first with the proper accrual method for measuring when West Marion's[1] claim began to run. The district court held that fraud claims accrue "at the time the wrong (misrepresentation) upon which the claim is based was done regardless of the time when damage results." (citing Mich.Comp.Laws § 600.5827 and *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.,* 713 F.Supp. 1019 (W.D.Mich.1989), *aff'd,* 933 F.2d 1008 (1990)). Based upon a literal reading of this statute, the court held that the lease date of the 1980 silo, when the misrepresentation occurred, initiated the running of the statute of limitations. In other words, the district court rejected the discovery accrual standard proposed by West Marion. The court noted, however, that if "a defendant fraudulently conceals the existence of a claim, an action may be commenced 'at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim....'" (citing Mich.Comp.Laws § 600.5855). Judge Hackett applied a discovery accrual standard only with respect to the fraudulent concealment and RICO claims.

Harvestore and Smith support the district court's conclusion that the discovery accrual standard does not apply to the general six-year statute of limitations for fraud, though there is some question about their posture in the district court. In contrast, West Marion argues that, despite the

---

**1.** As an initial matter, we determine that the district court did not err by allowing West Marion to intervene in this suit. Whatever the validity of the district court's dismissal of the Van Sickles' claims due to judicial estoppel, we believe that those same defects do not prevent West Marion from pursuing this action in either the district court or this court.

We do not reach the claim that the district court erred by dismissing the individual Van Sickles. We must dismiss their attempted appeal because we do not have jurisdiction over

them. The Van Sickles did not file a separate notice of appeal and they are not listed as parties on West Marion's notice of appeal. Thus, the Van Sickles have not complied with the requirements of *Minority Employees v. Tenn. Dept. Emp. Sec.,* 901 F.2d 1327 (6th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). That West Marion listed the Van Sickles on the notice of issues presented does not alter our conclusion that they are not properly before us at this time.

statutory language, the Michigan courts have announced a discovery rule to the effect that a cause of action for fraud accrues "when plaintiffs knew or should have known of the misrepresentation." (citing *Fagerberg v. Leblanc*, 164 Mich. App. 349, 416 N.W.2d 438, 441 (1987) and *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149, 158 (1974)).

■ We must examine this thorny issue of Michigan law to determine whether the district court applied the proper accrual standard to the six-year statute of limitations. Several early Michigan cases dealing with fraud perpetrated during the sale of bonds suggest that the discovery accrual standard does not apply to this case. *See e.g., Thatcher v. Detroit Trust Co.*, 288 Mich. 410, 285 N.W. 2 (1939); *Ramsey v. Child, Hulswit & Co.*, 198 Mich. 658, 165 N.W. 936 (1917). After discussing the six-year statute of limitations for fraud and the two-year provision for fraudulent concealment, the *Thatcher* court stated:

> Under the two sections above quoted, a plaintiff now has, in any case, the full period of six years from the date of the fraudulent act or other act creating his cause of action, within which to institute suit, and moreover, where the defendant has fraudulently concealed from him his cause of action, he has, under any circumstances, not less than the full two years from date of discovery in which to bring his action.

*Thatcher*, 285 N.W. at 4 (citing *Ramsey*, 165 N.W. at 939).

In apparent contrast to *Thatcher* and *Ramsey* are several modern cases that have adopted the discovery accrual standard in various tort contexts. *See e.g., Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1 (1987) (applying discovery accrual rule to wrongful death actions based on asbestos exposure); *Williams*, 215 N.W.2d at 158 (applying discovery accrual rule to negligent misrepresentation actions); *Johnson v. Caldwell*, 371 Mich. 368, 123 N.W.2d 785 (1963) (applying discovery accrual rule to medical malpractice actions); *Fagerberg*, 416 N.W.2d at 441 (an intermediate appellate

court decision, applying discovery accrual rule to fraud and misrepresentation actions).

Several commentators have concluded that "[t]he six-year statute of limitation begins to run when the fraud occurs or the plaintiff first suffers injury as a result of the fraud, not when the fraud is discovered." E. Pappas & J. Steiger, *Michigan Business Torts*, at § 6.13 (——). This material discounts the *Fagerberg* opinion because it "cited *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974), [which] ... was not a fraud case, but rather concerned a negligent misrepresentation to which the court applied the three-year statute of limitation governing most torts." *Id.* Though accurate, we are doubtful of this observation indicating that *Fagerberg* does not establish a discovery rule in the fraud and misrepresentation context.

The Michigan Supreme Court's analysis of accrual standards and its interpretation of Michigan statutes has changed since 1939, when it decided *Thatcher*, the most recent opinion rejecting the discovery accrual standard for certain fraud actions. In *Larson*, a recent case, the court began by noting, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Larson*, 399 N.W.2d at 4 (quoting Mich.Comp.Laws § 600.5827, the same statute relied upon by the district court and the defendants). Although this explicit language seems to preclude the application of the discovery accrual rule, the Michigan Supreme Court held in *Larson* "that the 'wrong' which triggers the statute is not the date of the breach of the duty, but the date on which an injury results from the breach." *Larson*, 399 N.W.2d at 4. The court rationalized its deviation from the statute's plain meaning by noting: "If the statute were interpreted as requiring accrual from the date of the breach of duty, negligence actions would be barred before they could be brought." *Id.* The court then analogized its interpretation of the accrual statute to the rationale of the discovery rule itself, and determined that the two were compatible. *Id.*

Apparently, it was a short step for the Michigan court to hold that the "date on which an injury results from [a] breach" is really the same as the date on which the "plaintiff knew or should have known of the" injury. *Id.* In conclusion, the court stated that "when the situation requires it, this Court will apply the discovery rule to determine the date of accrual." *Id.*

■ Unlike the early pronouncements in *Thatcher* and *Ramsey*, recent decisions such as *Larson* indicate that selection of the proper accrual standard depends on a case-by-case analysis, not on adherence to a static rule. This change of position results in part from the Michigan Supreme Court's interpretation of Mich.Comp.Laws § 600.-5827, a statute which the court did not consider in *Thatcher* and *Ramsey*.[2] This statute, combined with its judicial gloss, which has been used by the Michigan courts to introduce the discovery accrual standard in various tort contexts, significantly reduces, if not eliminates, the precedential value of *Thatcher* and *Ramsey*.

We believe that given the diminished importance of these older cases, due to the interpretation of Mich.Comp.Laws § 600.-5827, the discovery accrual standard applies to this fraud action. Although this is a very unclear area of the law, we find that there is persuasive evidence that the Michigan Supreme Court, if faced with this case, would invoke the discovery accrual standard as it has done in at least three different contexts over the past several decades. *See In re Ryan,* 851 F.2d 502 (1st Cir.1988) (stating that federal courts may deviate from state precedent when there is "persuasive data" that a state supreme court would not follow earlier decisions).

The *Williams* decision supports our conclusion that the discovery accrual rule applies to this matter. In that case, the plaintiff sued the defendant for negligent misrepresentation resulting from an abstracter's mistake. *Williams,* 215 N.W.2d at 150–51. To determine whether to apply the discovery accrual rule, the court examined the elements of the cause of action, which included injury and damage to the plaintiff. *Id.* at 158. The court observed "that running the statute of limitations from the day the tortious force was put into motion would destroy plaintiff's cause of action before it arose" because the plaintiff may not know of the damage or injury for many years. *Id.* The court remedied this concern by adopting the discovery accrual standard. *Id.* The court announced that "the statute of limitations does not begin running until the point where plaintiff knows or should have known of this negligent misrepresentation." *Id.*

Although *Williams* dealt with negligent misrepresentation, we believe its teachings would be found relevant to this fraud cause of action.

While the Idaho Court adopted a *fraud* rationale and we a *misrepresentation* rationale, we agree with the court's quotation as regards the statute of limitations:

"If the statute runs in favor of the abstractor [sic] from the delivery of the abstract, the company would be released long before the falsity of the abstract could reasonably be discovered by the purchaser. This would not be justice and ought not be the law."

*Id.* at n. 18 (citation omitted; emphasis in original). We believe that the rationale adopted in *Williams* applies to this case for two reasons. First, footnote 18 indicates that negligent misrepresentation and fraud are indistinguishable for purposes of when the statute of limitations accrues. Second, the sixth element of fraud is "that [the plaintiff] thereby suffered injury." *Kassab v. Michigan Basic Prop. Ins. Assoc.,* 185 Mich.App. 206, 460 N.W.2d 300, 303 (1990), *appeal granted,* 481 N.W.2d 341 (1991). For the same reasons stated in *Williams,* if the discovery accrual standard did not apply to fraud, then the statute of limitations might extinguish the cause of action before the plaintiff knows or should know it has come into being.

**2.** Apparently, Mich.Comp.Laws § 600.5827 did not exist when the Michigan court decided these cases.

The *Williams* decision does not end our inquiry, however. In *Larson*, the Michigan Supreme Court, after examining the *Williams* rationale, engaged in a separate analysis to determine whether to the policies supporting statutes of limitations would be harmed by adoption of the discovery accrual rule. *Larson*, 399 N.W.2d at 5–7. The court identified two inviolable "purposes behind statutes of limitation . . .: 1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale or fraudulent claims." *Id.* at 5. In the present case, we find that the discovery rule does not violate the purpose of encouraging plaintiffs to pursue claims because, like the asbestos workers in *Larson* or the landowner in *Williams*, fraud plaintiffs do not have a cause of action until they know or should have known of their injury. Similarly, application of the discovery accrual rule does not harm the purpose of preventing stale claims because the damage allegedly caused by the Harvestore silos "tends to develop, rather than disappear, as time passes." *Id.* at 6.

Based upon *Williams, Larson* and *Fagerberg*, we conclude with some trepidation that the discovery accrual standard applies to West Marion's fraud cause of action. We now must decide what effect our legal conclusion has on the outcome of this dispute.

West Marion concedes that it does not claim damages as a result of fraud in the acquisition of the 1973 silo. Any facts raised with regard to that unit are relevant only to the extent that they indicate when West Marion knew or should have known of the alleged fraud in connection to the 1980 silo. West Marion's fraud claim is barred if it knew or should have known of the alleged fraud prior to October 1981, six years before its counterclaim against Agristor.[3]

Smith and Harvestore argue that even if the discovery accrual standard applies, then we must nevertheless affirm the dis-

trict court's grant of summary judgment because "West Marion repeated[ly] admi[tted] that it knew that its Harvestore units were not performing as represented long before six years from suit." To support this claim, Smith and Harvestore cite the deposition testimony of Merle and Reginald Van Sickle.

Despite the urgings of Smith and Harvestore, we will not affirm the district court's grant of summary judgment on the fraud claim. To understand why this is so, we must examine Judge Hackett's opinion and some of the parties' submissions in more detail. Judge Hackett divided her discussion of "Application of Limitations Periods to Facts" into three separate inquiries dealing with the general six-year fraud provision, the two-year fraudulent concealment provision and the four-year RICO provision.

With regard to the six-year statute of limitations for fraud, Judge Hackett held:

Plaintiff filed this action on October 9, 1987. Undeniably, the asserted misrepresentation, and plaintiff's subsequent lease of the silo on April 22, 1980, in reliance on the misrepresentation, occurred more than six years prior to the filing. The alleged wrong, therefore, occurred outside the six-year period provided by the statute for filing fraud actions and plaintiff is barred, absent fraudulent concealment, from pursuing its fraud claim. (citation omitted)

The district court did not apply the discovery accrual rule to this portion of the analysis.

Judge Hackett followed this discussion with an examination of what West Marion knew or should have known for purposes of the fraudulent concealment and RICO provisions only. She concluded:

The court, in view of the record, can only conclude that plaintiff, through the Van Sickles, either knew or should have known by *mid–1982* that the silos were not in fact oxygen-limiting. The number and the nature of the problems admitted-

---

**3.** There is some dispute regarding whether October or November, 1987, is the tolling date of the statute of limitations. We do not decide that issue because it is immaterial to our disposition of the case.

ly encountered strongly indicate a connection with the silos, and plaintiff's attempt to avoid the consequences of its tardiness in filing this action by claiming that its local dealer denied such a possibility is, quite frankly, of no value from an evidentiary standpoint. That is, even if the dealer made the alleged denials, the undisputed facts known to plaintiff as of *1982*, respecting mold, calving problems, protein deficiencies, and the failure of the herd to yield additional milk, establish that plaintiff should have known of the alleged misrepresentation at that time. (emphasis added)

Although the district court limited its determination of when West Marion knew or should have known of the misrepresentation to the fraudulent concealment and RICO portions of the action, we are free to expand upon the importance of this conclusion based on our own evaluation of the record and the relevant law.

█ We accept the district court's finding that West Marion knew or should have known of the alleged misrepresentation by at least "mid–1982." This conclusion comports with the evidence submitted by the parties because, although West Marion had experienced serious problems for many years, it was not until mid–1982 that the dairy herd experienced dramatic calf losses as a result of spoiled grain from the silos. We do not believe that, as a matter of law, West Marion should be held to have known or that it should have known of the alleged fraud prior to this time. West Marion submitted sufficient evidence to raise a genuine issue of material fact establishing that a reasonable person might not have connected the problems on the dairy farm to the Harvestore silos, and therefore a reasonable person might not have known of the alleged fraud prior to mid–1982. It is uncontroverted that West Marion did not have subjective knowledge of the alleged fraud until very near the filing of this suit.

Since there is a genuine issue of material fact with regard to whether West Marion knew or should have known of the alleged fraud prior to mid–1982, the district court erred by granting summary judgment in favor of Harvestore and Smith. For purposes of summary judgment, West Marion's fraud claim is not barred by the statute of limitations because it filed suit in October 1987, less than six years after mid–1982, the latest time at which we establish as a matter of law that West Marion knew or should have known of the alleged misrepresentation.

Of course, if the case proceeds to trial after remand, Harvestore and Smith will be free to present evidence to the jury to prove that West Marion knew or should have known of the alleged misrepresentation prior to October, 1981. *See Hill v. A.O. Smith Corp.*, 801 F.2d 217 (6th Cir. 1986) (indicating that when a plaintiff knew or should have known of a problem is a typically a jury matter). If there is again a conflict in the evidence at trial regarding West Marion's knowledge, then the jury is entitled to resolve that dispute. *See Agristor Leasing v. Saylor*, 803 F.2d 1401 (6th Cir.1986).

## C. ACCRUAL OF RICO STATUTE OF LIMITATIONS

The district court held that "the proper test for determining the timeliness of plaintiff's RICO claim is whether plaintiff knew or should have known of the alleged fraudulent misrepresentations concerning the oxygen-limiting characteristics of the silo prior to October 9, 1983 (four years prior to the filing of the Van Sickles' counterclaim)." (citing *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir.1988)).

In *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court held that the statute of limitations for RICO claims is four years. The Court did not establish an accrual standard, and we have not decided this issue apart from dictum in the pre-*Agency* case cited by the district court.

There are three accrual methods currently used by the Courts of Appeals. One is the so-called last predicate act rule which states:

the limitations period for a civil RICO claims runs from the date the plaintiff

knew or should have known that the elements of the civil RICO cause of action existed unless, as part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity.

*Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1130 (3d Cir.1988). We note that under this rationale, in certain cases where the illegal activity is allegedly continuous, the statute of limitations will never begin to run. This conflicts with the public policy of repose which is the source of such statutes in the first place. We decline to adopt this rule.

Several Circuits follow some form of discovery rule. *See e.g., Stitt v. Williams,* 919 F.2d 516, 525 (9th Cir.1990); *Rodriguez v. Banco Central,* 917 F.2d 664, 665 (1st Cir.1990); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 220 (4th Cir.1987); *LaPorte Constr. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254, 1256 (5th Cir.1986). In *Hofstetter,* we implicitly approved the discovery rule, observing that "the trial court correctly instructed the jury to determine whether the plaintiff knew or should have known of the defendants' fraudulent scheme before...." *Hofstetter,* 905 F.2d at 904.

Still other Circuits follow a compromise rule.

[A] civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern.

*Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Florida, Inc.,* 906 F.2d 1546, 1554–55 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); *see also Granite Falls Bank v. Henrikson,* 924 F.2d 150 (8th Cir.1991);

*Bath v. Bushkin, Gaims, Gaines & Jonas,* 913 F.2d 817 (10th Cir.1990).

West Marion argues that we should adopt the *Bivens* rule, though in the district court it sought application of the last predicate act standard. Harvestore and Smith maintain that even if we adopt the *Bivens* approach, then West Marion's claim is still barred by the pertinent four-year statute of limitations because West Marion knew or should have known of the injury, the source of the injury and that the injury was part of a pattern prior to October, 1983. Under either the discovery rule or the *Bivens* rule, we hold that West Marion's RICO claim is barred. If West Marion's claim fails to satisfy the more generous *Bivens* rule, then it also fails under the discovery rule as well. We will, therefore, examine the *Bivens* analysis.

■ We are satisfied that, as a matter of law, West Marion knew or should have known of the alleged injuries and the source of the injuries by at least mid–1982, when the problems with the second silo became apparent. As of that time, West Marion began to experience the deaths of many calves in addition to the continuing problems of reduced production by the herd and protein loss in the stored grain. Although the Van Sickles may not have had subjective knowledge linking their injuries to the Harvestore silos, we hold, as a matter of law, that a reasonable person should have determined that the calf losses of mid–1982 were caused by the "poisoned" grain and hay.

We believe that the same facts prove West Marion knew or should have known by mid–1982 that the alleged misrepresentations and injuries were part of a pattern. A pattern consists of "at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). To establish a pattern a plaintiff must prove both " 'a relationship between the predicates' and the 'threat of continuing activity.' " *Vild v. Visconsi,* 956 F.2d 560, 565 (6th Cir.1992). In the present case,

West Marion alleges predicate acts consisting of wire and mail fraud related to the promotion, sale and lease of silos. West Marion relies on alleged, illegal representations made between 1972 and 1986. We are satisfied, as a matter of law, that West Marion should have determined that the representations were part of a pattern at the same time it should have discovered that the silos caused the alleged problems on the dairy farm.

Since West Marion knew or should have known of its injuries, the source of its injuries and that its injuries were part of a pattern prior to October, 1983, we affirm the district court's grant of summary judgment in favor of Harvestore and Smith on the RICO claim.

## III.  DISCOVERY ORDERS

West Marion appeals from three separate discovery orders of the magistrate judge below.  The parties have argued extensively in their briefs and in post-appeal motions regarding whether these determinations were final orders and whether West Marion preserved these matters for appeal.  One of the few things agreed upon by the parties is that the district court did not review the magistrate judge's discovery orders because it granted the defendants' motion for summary judgment.  Since the district court has not had an opportunity to review the discovery orders, we will remand these issues to the district court for further proceedings.  We do not make any determinations or findings with respect to whether West Marion waived its right to object to the orders.  We leave that matter solely for the district court.

## IV.  CONCLUSION

We REVERSE the district court's grant of summary judgment in favor of Harvestore and Smith on the fraud claim because West Marion succeeded in raising a genuine issue of material fact regarding whether it did not know or should not have known of the alleged misrepresentation until after October, 1981.  We REMAND this portion of West Marion's suit to the district court for further proceedings consistent

with this opinion.  Since we have REVERSED and REMANDED based upon the district court's misunderstanding of the correct accrual standard in Michigan, we will not address the propriety of the lower court's discussion of the fraudulent concealment issue.

We AFFIRM, however, the district court's grant of summary judgment on the RICO claim, and its decision to allow West Marion to intervene.  We do not reach the Van Sickles' argument that the district court erred by dismissing them since we lack jurisdiction over that portion of the appeal.  Furthermore, we REMAND West Marion's discovery arguments to the district court.